This is an appeal by the plaintiffs, Bruce Underwood and James and Sylvia Floyd, hereinafter we call them "the plaintiffs," from the judgment of the trial court holding that the defendants, Rose Lavonne Shepard, Buddy Eskew, and Retta C. White, had not provided an easement across a parcel of land for access to the waters of Smith Lake. On appeal, Underwood argues that the evidence clearly shows an easement by grant, necessity, or implication. We agree and reverse.
The facts of this case are as follows:
Robert White and his wife, Retta, owned land in Cullman County, Alabama. Their property joined the waters of Smith Lake at the south side of their property. The Whites established "White's Fish Camp" as a business located along the water line. On the water's edge of their property, the Whites also built a boat launch that connected to a road known as White's Fish Camp Road.
On October 7, 1967, the Whites sold an acre of property to W.C. Crawford and his wife, Pauline. That land was not located on the water. However, the deed provided, in pertinent part: "Grantees shall have the right to use the waters of Smith Lake in the vicinity of the herein described premises." The Crawfords used the boat ramp for 15 years. They never paid a fee for the use; however, people who resided outside the property that was owned or had been owned by the Whites were charged a fee for using that ramp. On July 15, 1982, after the death of W.C., Pauline Crawford sold the one-acre of property to Bruce Underwood, with the deed containing the same clause. Underwood used the boat ramp from July 1982, until Rose Shepard and Buddy Eskew built a fence in March 1985, blocking off the launch area.
On May 29, 1968, Frederick Glenn Jennings purchased a lot from the Whites. Jennings began using the boat ramp soon after he purchased the property. On April 28, 1976, Jennings sold his property to Underwood.
On March 5, 1968, the Whites sold an acre of land to James E. Floyd and his wife, Sylvia. After purchasing the land, the Floyds used the boat ramp until March 1985, when Shepard and Eskew erected the fence.
The management of White's Fish Camp changed three or four times. However, during the changes, the defendants were allowed access to the boat ramp and were never charged for its use. In November 1983, Rose Lavonne Shepard and Buddy Eskew purchased the property known as White's Fish Camp. Eskew testified that when he moved to the property in 1983, the ramp was not in existence and a few burnt "stobs" imbedded with concrete were all that remained of the pier. Eskew built a 60-foot pier and a ramp. He testified that he did not intend to operate a fish camp on the property. He did admit that when he *Page 1316 
bought the property there was a floating boat launch. He also admitted that he was aware that Underwood and Floyd had launched boats from the area, but he said he did not know how long they had done so.
The plaintiffs, Underwood and the Floyds, argue that the judgment of the trial court should be reversed because the facts are undisputed and the trial court misapplied the proper law.
The plaintiffs in their complaint asked the trial court to declare an easement by implication, necessity, or grant over the defendants' land in order for them to have access to the waters of Smith Lake.[1] The plaintiffs argue that one of the main reasons they bought their property was the easy access to the lake. Without this easement, they argue, they would be forced to travel five to six miles in order to launch their boats.
Alabama currently recognizes at least seven ways to create an easement: "(1) By express conveyance, (2) by reservation or exception, (3) by implication, (4) by necessity, (5) by prescription, (6) by contract, and (7) by reference to boundaries or maps." Cleek v. Povia, 515 So.2d 1246 (Ala. 1987). The main thrust of the plaintiffs' arguments is that an easement by implication was created. Alabama recognizes such easements:
 Easements created by implication cover a variety of types of easements. Creation by this method requires not only original unity of ownership, Brewer v. Avinger, 208 Ala. 411, 94 So. 590 (1922), but also that the use be open, visible, continuous, and reasonably necessary to the estate granted. Birmingham Trust Savings Co. v. Mason, 222 Ala. 38, 130 So. 559 (1930); Walker v. Clifford, 128 Ala. 67, 29 So. 588 (1901). The implication is that the parties implied such an easement because the grantee, having seen the use the grantor made of the property, can reasonably expect a continuance of the former manner of use. R. Powell, [Powell on Real Property (abr. ed. 1968)] ¶ 411.
Helms v. Tullis, 398 So.2d 253 at 255-56 (Ala. 1981). In the present case, all of the lots in the area were part of the original estate of the Whites. In some of the deeds, the Whites provided that the grantees would have use of the waters of Smith Lake. It is true that the only easement specifically referred to as an "easement" was given to Alabama Power Company (in order to flood the property). It is also true that through the years, the different owners and managers of the Fish Camp permitted the owners of lands that had come through the Whites free access to launch their boats, while members of the general public were charged for access. The testimony also showed that many of the lots were located within a few hundred yards of the launching area, while the nearest other launching area was several miles from the area. There was also testimony to show that without this access, the property value of the lots dropped substantially. The defendants testified that they were aware that surrounding lot owners had used the launch area free of charge with unrestricted access, although they said they were unsure of how long they had done so. Although the defendants argue that the original launch had been washed away, the evidence shows that a floating launch had thereafter been used in the same location.
After considering the evidence ore tenus, the trial court found that no easement had been created. The defendants argue that the trial court's judgment should be upheld because the evidence was presented ore tenus.
 Where evidence is presented to the trial court ore tenus, a presumption of correctness exists as to the court's conclusions on issues of facts; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Cougar Mining Co. v. Mineral Land Mining Consultants, Inc., 392 So.2d 1177 (Ala. 1981). *Page 1317 
 However, when the trial court improperly applies the law to the facts, no presumption of correctness exists. Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala. 1985); League v. McDonald, 355 So.2d 695
(Ala. 1978).
Gaston v. Ames, 514 So.2d 877 (Ala. 1987) (emphasis added).
In this case, the material facts were undisputed, yet the trial court found no easement. Because we conclude that the plaintiffs properly set forth compelling evidence from which the trial court should have found an easement by implication, we reverse. It is apparent that the trial judge, in finding no such easement, misapplied the applicable law. The judgment is reversed and the case remanded for the trial court to enter a judgment declaring the existence of an easement by implication.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.
[1] Although the plaintiffs did not argue an easement by contract, a recent decision by this Court recognized and granted an easement by contract based on similar facts. See Cleek v.Povia, 515 So.2d 1246 (Ala. 1987).